The next case on the calendar is Russell v. Aid to Developmentally Disabled, Inc. Ms. Russell? Take your time My name is Faye Russell, and I'm pro se, trying to defend myself against the people that I actually was working for. I've seen some abuse, I've witnessed it, and I called it in, and after that I had an issue with retaliation from these people, saying that I wasn't qualified to do my job. I was hired as a cook, and not only was I hired as a cook, I started taking classes to become a direct support person, which was hands-on with the clients, so I was both a cook and a direct support person. So my supervisor would use me to come in to be the cook, and sometimes she would call me in to do the direct support person job, and I would do just both. In this briefing, they're basically talking about me being a cook. The last 13, 14 weeks of my employment at this facility, I was not the cook. I was just straight-up direct support person, I had no affiliation with the kitchen. If you look at the documents in the briefing which I made, I don't know if I could submit this to the court or not, but it's just the briefings from the appellate, proof of everything that will exonerate me from this case. We have your briefs, and we have the record below, access. Right, and I just put the ones that pertain to me, like when they said I did a no-call, no-show, I subpoenaed the phone company, and I got the records to prove that I did do that. They also said that I didn't show up for some days. If you look at the time sheet, the clock sheet on June 4th and June 8th when they said I didn't come in, you will clearly see that not only did I come in, I was at work early and I was there all day. So that didn't happen. I earned two enhancement checks from this company. The only way you can get enhancement checks is if you're in good with this facility and you do all your in-services. And I did just that. It's- Sorry, could I interrupt with a question? Yes. So let's just assume for purposes of argument that you were terminated unfairly and improperly and they should not have terminated you. But as I understand your claim, it is a claim that the termination was wrong because it was based on your gender. So can you tell us a little bit about that? The termination was wrong for retaliating against me and gender. There was a gender discrimination. I had complained about it several times. They would always ask us, the females, to take up the guy's slack. That's where I came in at. When I became a direct support person, even though I was hired as a cook, I would come in and do my job as a cook, and then the guys would call out the males. And my supervisor would always call me in because I was qualified to do the cook and direct support person to cover for these guys. If you read Michelle Dimmon's testimony, which was their witness, she clarifies that. If you listen to the state, where they tell you about the communication log. In the communication log, that was in there, but those pages was missing. But all that goes to the notion that they may have been very unfair in how they treated you. But we can only deal with that if there was gender discrimination. And it's that which I believe the judge was asking. And what we're looking for is, what was it specifically having to do with to treat you badly? Because every time that she called me in, I was coming in to cover her males, her guys. They would get in trouble. For instance, there was one who got in trouble during work hours. He took it upon himself to take a quad out and go riding around. The police came and confiscated the quad. They called me in April to come in and cover for him as a direct support person. So I went and did his job for him. There was one who left a guy in a car. The police came and took him. They still allowed him to keep his job when in for. He did all of these things wrong. He had no- Let me just see. Are you saying that when men did things of the same sort that they accuse you of, they were not disciplined while you were? Is that what the- That's exactly what I'm saying. What in the record that we have before us, or the district court had, are specific instances of that, of males being treated better? Well, the males being treated better, them constantly calling me in to cover for them, always males, them- I mean- If you look in there, if you look in the briefings, you will see their write-ups. The only one who signed the write-ups was Stacy. They didn't sign the write-ups. Those are all fabricated write-ups. Those are all made up write-ups. Now, on the retaliation, when did you make a complaint and then the retaliation started? Because when you filed it, it was after you were terminated. So that the filing can't be the- But your comments, your criticism, what was the date of those in relation to when they started treating you? It was around the end of May, I believe, when I first called and told the job about the situation. And then shortly after, after I witnessed the abuse that was going on, I got tired of it. And that's when I called the state. As of a record, which is what we have to go on, I'm sorry, does a record show the time that you made the complaint in May? That it was around that time in May and then certain things started happening to you? The record should show. When I got called in, in May is when I started- When I got called in, in January, actually, when I got called in, in January was the first and final warning that I ever got from them. I never got in trouble before. It was in January is when they called me in for the investigation of what happened to the guy. And that's when they retaliated against me, because I went beyond them and I had called the state to come and investigate what went on. Okay, thank you. We'll look for that. Thank you. And you've reserved some time for rebuttal. Okay. Good morning, your honors. My name is John Porta and I appear on behalf of Appalese. May it please the court. Ms. Russell's appeal essentially repeats the identical arguments that were put forth to the district court, which were properly dismissed. She's simply asking this court to substitute its judgment for that of the district court. Ms. Russell's claims of discrimination and New York State human rights law retaliation both fail for one important reason. Ms. Russell produces no evidence to establish a prima facie case to link her gender or her complaints of gender discrimination to any adverse employment action. None of the evidence produced to the district court can possibly warrant a rational fact finder to make an inference that Ms. Russell's sex and or her complaints of sex discrimination factored into the decision she now complains about. Now she says that in mid-May she made complaints and then shortly after these actions against her began. Now if the record shows that, why isn't that sufficient with respect to causation on that, if the record shows it? The record does not show that, your honor. First of all, if she's talking about in mid-May, she was already issued the final written warning three months prior to that. The record actually reflects, and I'll provide to you the record citation for assistance. The record reflects in 447 to 450, when deposed, Ms. Russell repeatedly stated that she could not recall when she complained about sex discrimination. What Ms. Russell, I believe, earlier mentioned was in May, her complaints about consumer abuse. Such as complaints about consumer abuse is not protected activity, which is an ongoing, it's not a protected activity under the civil rights statutes. And this is an ongoing theme since days after her termination, that the reason for her termination was based upon, her own statements about the reasons for her termination were based upon her complaints of consumer abuse. Now, she also referred to a possibility of a January period when she made complaints about a treatment discrimination on the basis of gender. Your honor, the record doesn't reflect that. The record on the same page as cited here, Ms. Russell repeatedly stated that she didn't know when she complained about sex discrimination. And I think it's important, I'll focus on the retaliation piece right now since we are on that subject. Ms. Russell produces, again, no causal link between her claims of gender discrimination and her ultimate termination. First, there is absolutely no evidence, direct evidence, of retaliatory animus. There's no comments made by any of the defendants, any of the appellees that would suggest that retaliation was a motive. Second, to- Is there, she talks about comparators. What, if any, evidence is in the record about the comparators and their misconduct and disciplinary action? The record is, there's quite extensive evidence in the record that demonstrates male employees who worked in the same house as Ms. Russell were routinely disciplined for similar infractions, including attendance issues and other issues. There's also evidence in the record to suggest that those male employees, too, also were terminated for similar infractions. Therefore, with respect to the discrimination prima facie case, she cannot establish disparate, she cannot establish an inference of a discrimination through disparate treatment. Well, just for purposes of McDonnell Douglas, she is supposed to establish a prima facie case, but I thought that was without regard to countervailing evidence at that step. Your Honor, she doesn't produce any evidence of comparator, simply situated males being treated more favorably than her on the prima facie case. The only evidence that Ms. Russell submits is her own conclusory statements, that male, own conclusory statements based upon information and belief that they were not disciplined for similar infractions. Those arguments fail for a number of reasons. As noted in Danzer versus Norton Systems case, when dealing with pretext, she cannot establish a triable issue of fact, and this is dealing with the male comparators. She cannot establish a triable issue of fact when her belief, when her statements are based solely upon information and belief. So, therefore, there's no inference that can be made. Going back to the inference of retaliation, there is no circumstantial evidence of retaliation as well. In the absence of direct evidence of retaliation, courts often look at the timing, often look at the timing between the actual protected activity and the adverse employment action at issue. Here, as we previously stated, Ms. Russell could never explain when or why she actually complained about sex discrimination. Therefore, she cannot avail herself of the presumption of causation based upon temporal proximity in this specific case. Additionally, when dealing with retaliation claims, as stated in the Supreme Court Nassar case, the standard here is but for. And Ms. Russell, even in her comments in her opening oral argument, and in the final page, her final piece of written argument here in her appeal, repeatedly states that the basis for her termination was based upon her complaints of consumer abuse. So again, she has raised that issue, suggesting more likely than not that that is the reason for her termination. And I just want to briefly just talk about one, going back to the discrimination claim, why her claim fails and why she cannot establish causation. There are two inferences here that can be made against a finding of sex discrimination. One, we have the same hire, same fire inference suggesting that Ms. Russell's sex had nothing to do with the decisions. Christina Knoll was the director of human resources. She made the decision to hire Ms. Russell, knowing Ms. Russell was a female. And then a year later, she made the decision to terminate her employment. And the second reason why no rational fact finder could possibly infer a discriminatory motive is the comparator data that we have submitted in connection with the underlying claims. Thank you, Your Honor. Your Honor, this is a retaliation case. And yes, there were males who, like I said, they would get in trouble and she would always make an excuse for them. If you listen to their star witness, Michelle Dimond's testimony, she verifies it. She backs it up. There was other females who worked there. We had a communication law we all wrote in. They wrote in that book, the state is on document. The state verified that those pages that you were supposed to be looking at here today was somehow taken from that book. And in that book, every female wrote in there about the issues that was going on. And it was an ongoing complaint. It wasn't just a specific date. It was an ongoing complaint about the gender situation. As for the retaliation situation, it's basically they retaliate against me if you look in the documents. Everything that he said in this docket, 173417, if you look in the appendix, you will see that it is all made up. The no show, no call, there's photos to prove it. The missing of the in-services, I got my enhancement checks. I was well qualified, I was over qualified, I was hired as a cook. And I took it beside myself to become a direct support person. But all that suggests that they were wrong in firing you. But what we have to, in order for us- That's why I'm telling you, yes. There has to be a link to gender, and there has to be a link to retaliation for complaints about gender. That's where I'm having problems, that their firing you may have been terribly unjust as another matter. But it's not something that we're allowed to do anything about. Right, and the agenda issue is they constantly called the cook, who was me, to come in to cover for these male employees. During the day, during the night, and that's how my hours was shifted around, because I was constantly coming in. We, the females, had to constantly come in and cover for these kids. These male people that worked at Aid to Developmentally Disabled. Thank you, Ms. Russell. We'll take a very careful look at the record. We have both sets of briefs. Thank you both for your arguments. That's the last case to be argued on the calendar this morning, so I'll ask the clerk to adjourn court. Court is adjourned.